## M. AND L. R. R. R. COMPANY *v.* WOODRUFF.

CHANCERY PRACTICE—*When remedy at law, etc.*—Where the record shows that complainant has an ample and complete remedy at law, the bill should be dismissed for want of equity.

*Appeal from Pulaski Chancery Court.*

HON. T. D. W. YONLEY, Chancellor.

*Clark & Williams*, for appellant.

GREGG, J.

On the 11th of April, 1859, the appellee executed to the appellant a sealed instrument whereby he bound himself, his heirs, etc., within sixty days after the completion of a continuous line of railroad from White river to Little Rock, to convey to said company a right of way of one hundred feet in width over his tract of 2070 acres of land, near Little Rock, and over any lands he had in Prairie and Pulaski counties, outside of the city of Little Rock, and such additional width as might be necessary for said road, where deep cuts or fillings might be necessary; and also fifteen acres on the north bank of the Arkansas river, below and opposite Little Rock, and next to the river, to be selected by the company for depot purposes, and not to be sold or leased for warehouses or stores, or for any other use or purpose whatever, and reserving the right of ferriage, and in case of a forfeiture of the company's charter, the lands to revert; the company to pay all taxes and to signify their acceptance of the lands upon such terms, which was done; and, by mutual consent, the description of the lands, so selected, was indorsed upon the obligation, and the instrument so indorsed was, by the appellee, on the 15th of January, 1861, duly acknowledged, and on the 19th filed for record in Pulaski county.

The bill charges that the company took possession of the lands under said covenant, and that they still hold the same;

that the company, in 1861 or 1862, built a temporary shed or depot on the fifteen acre piece of land, and so far pretended to comply with their covenant; that the appellee made such covenant in consideration of the advantages he could derive from having a railroad depot within his lands, and that he had laid out his adjoining lands into town lots, with streets, etc., so the same could be leased or sold profitably, and also because a depot so located would secure the transportation of freight and passengers over his ferry, and he could not then be rivaled by an opposition ferry located four or five hundred yards above his; that a village of two hundred inhabitants soon sprung up on appellee's lands, adjacent to said depot, but of temporary buildings, such as the uncertainty of existing war would allow; that such buildings were erected without the consent of the appellee, and only fit for the existing emergency, and were never of any profit to him, but they evidenced that better structures would have taken their places in times of peace; that the frail and temporary depot buildings, placed on said donated lands, had long since been removed, and that no depot buildings remained thereon; that various other buildings, for various purposes, have been erected, on said donated lands, by the consent of the company, and that a warehouse was erected by the United States government on other lands of appellee, near said fifteen acre tract, which has been purchased by the company, and is still used by them as a store house for government freight; that they have inclosed within their depot grounds about one half acre of land belonging to the appellee, and that they are using the same without any right; that said company purchased buildings, which had been erected by the government, about one-half mile above the lands so donated, and have established a depot there for the receipt of freight and passengers, and that they have abandoned the depot on the lands so donated to them, and that they have diverted the transportation of freight and passengers from the appellee's ferry; that Argenta, another village, has been built up near said last depot, and that many of the

houses on appellee's lands, adjacent to the former depot, have been removed or torn down, and that his lands are now worth no more and probably not as much as if such depot had never been established, and that the advantages which were contemplated, and which were the consideration for said covenant, have been lost and wholly denied to him; and he prayed that the instrument in writing be cancelled, and the possession of all of said lands (except such as were granted for a right of way) be restored to him, and that the company may be required to remove their buildings off of said lands, and that his title be quieted, etc.

Robertson, the president of the railroad company, answered. He admitted the title to the land, the making of the contract and the location of the first depot as charged in the bill. He denied that they held out inducements of profit, etc., and responded that the written instruments, referred to, constituted the only agreements. He denied the removal of the depot from the donated lands, and avers that the government built thereon, and that such buildings are still used for a depot and other legitimate railroad purposes. He admits that the government extended the railroad about a half mile up the river and there built another depot, not on appellee's lands, and that the company had to pay for these buildings, and that such buildings are still used for a depot; he denies that the company caused to be built houses, on the donated lands, for other than railroad purposes; but says the government did build many, and the company had to account to the government for them, and that they have temporarily allowed them used until some disposition can be made of them, and that such houses are of great value, and to decree the lands to appellee would give them to him without consideration, and would be unjust. And he alleges that the company has the right to maintain a depot a half mile above the donated lands, or any other depots they may desire, and they submit there is a want of equity in the bill, and asks the benefit of a demurrer upon the hearing.

On the 12th of July, 1869, the cause was heard upon bill,

answer, exhibits and depositions, and the court found for the appellee and all the material allegations in the bill; decreed that the obligation be canceled, and the possession of the lands restored to the appellee; that a writ issue requiring the sheriff to put him into possession of the lands and all tenements thereon, including the lands not donated, but enclosed for depot purposes, and that the company pay all costs; from which decree this appeal is prosecuted.

It is evident, from the record, that the appellee intended to transfer the fifteen acres of land upon the condition that a depot should be located thereon, and the advantages of such depot location was the consideration upon which he covenanted to make title. But so far as we can learn from this record, there has been no conveyance of title by the appellee to the railroad company, and if they have failed to comply with their agreement, by which he has suffered loss, or been deprived of the benefits contemplated, we see no reason why he may not re-enter, and again possess himself of the lands, and if those in possession dispute his right of entry, his remedy at law is ample and complete. He shows in his bill that he is the legal owner of the lands; then, if others are wrongfully in possession, ejectment is clearly his remedy. It is true, he says, that he agreed to convey these lands (except one half acre) upon condition; but he has made no deed of conveyance and alleges that the appellants have not complied with the conditions of the bond or covenant between them, and therefore that they are not entitled to a deed or to the possession of the lands; if this be true, as alleged by the appellee, we see no cause for his coming into a court of equity; and, upon the hearing, the court should have sustained the appellant's demurrer to the bill, and for this error, the decree of the court of chancery is reversed and set aside, and a decree will be entered in this court, dismissing appellant's bill for want of equity, and assessing all costs against him.